## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-3070

DIEGO SEDILLO,

    Plaintiff,

v.

LONG VIEW SYSTEMS CO. (USA),

    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiff Diego Sedillo ("Sedillo"), through his undersigned counsel, Martinez Law Group, P.C., and for his Complaint and Jury Demand against Defendant Long View Systems Co. (USA) ("Long View Systems" or "LVS") hereby states and alleges as follows:

### INTRODUCTION

After enduring eighteen (18) months of racial slurs and harassment, Sedillo was unlawfully terminated on January 12, 2017, as part of LVS' continuing efforts to harass and eliminate Mexican/Hispanic employees and discriminate against employees based on disability, national origin and race. Sedillo was illegally targeted and terminated as part of this pattern and practice. In fact, Long View Systems' management openly used racial slurs when addressing Sedillo, and made no effort to hide their racial animus. LVS' Director of Human Resources was copied on multiple harassing emails and only contributed to the conduct. When Sedillo complained to his immediate supervisor, the only other Mexican American at LVS, he was told

they would both be fired if either addressed the discrimination with senior management. Courageously, Sedillo reported the harassment to senior management. Instead of confronting the harassers, however, LVS told Sedillo to work from home. Isolated, and worried about his livelihood, Sedillo used alcohol to cope. Early this year, Sedillo disclosed his battle with alcohol, and his intent to seek treatment to Long View Systems. Within hours of Sedillo's disclosure, however, Long View Systems terminated his employment. And, once Sedillo filed a complaint with the EEOC regarding workplace discrimination, his agreed upon post-termination benefits were slashed. This reduction forced Sedillo out of his rehabilitation treatment center weeks early. Sedillo's immediate supervisor -- who predicted they both would be fired if Sedillo escalated his complaints -- was indeed terminated soon after Sedillo.

Sedillo brings discrimination (including harassment), hostile work environment and retaliation claims based on his disability, national origin and race.

## PARTIES, JURISDICTION, AND VENUE

1. At all times relevant to this Complaint, Plaintiff Diego Sedillo was a resident of and domiciled in Colorado. He is Hispanic. He was employed with LVS from July 6, 2015 until January 12, 2017.

2. Defendant Long View Systems is a foreign corporation with its principal office at 555 17th Street, Suite 1600, Denver, Colorado. LVS is registered to do business in Colorado, maintains a corporate office in Denver, and did so at all times relevant to this Complaint. Sedillo's work and job assignments were primarily located in Denver.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. This action is authorized and instituted under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*. Jurisdiction supporting Sedillo's claims for attorney's fees and costs is allowed by the federal statutes at issue herein, and conferred by 42 U.S.C. § 1988.

4. The Court has personal jurisdiction over LVS because LVS has conducted business in the State of Colorado which has given rise to this cause of action, and LVS has maintained such systematic and regular contacts with Colorado to constitute a presence in the state.

5. At all relevant times, Long View Systems was covered by the definition of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII; 42 U.S.C. § 1981; and 42 U.S.C.A. § 12111(5)(A).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 1988, and 42 U.S.C. § 2000e-5(f)(3) because the conduct and employment practices at issue were committed within the District of Colorado.

7. All procedural prerequisites for filing this suit have been met.

8. Sedillo timely filed a Charge of Discrimination alleging discrimination based on his color, race, national origin and disability, and retaliation, against Long View Systems with the Equal Employment Opportunity Commission ("EEOC") within 90 days of his employment termination.

9. Sedillo received a Notice of Right to Sue letter on August 10, 2017.  Sedillo and Long View Systems entered into a tolling agreement effective on October 10, 2017.  By its express

terms the tolling agreement expires on December 15, 2017.  Therefore, this Complaint and Jury Demand is being filed within 90 days of Sedillo receiving his Right to Sue from the EEOC, and is timely.

## FACTUAL ALLEGATIONS

10. Sedillo is a 47-year-old, Mexican-American man.

11. He worked in Strategic Services at LVS in Denver, Colorado from July 6, 2015 to January 12, 2017.

12. Sedillo had a distinguished career prior to joining LVS, serving as an Area Vice President, Vice President, and President of three (3) different companies in the staffing and recruiting industry.

13. Additionally, Sedillo served a term as Chairman of the Board of the Hispanic Chamber of Commerce before joining LVS.

14. His track record of achievement convinced LVS sales manager Tim Stevens ("Stevens") to recruit Sedillo to LVS to grow the staffing and consulting department.

15. Once Sedillo was employed at LVS, Julian Loveday ("Loveday"), General Manager of LVS' Denver office, and Stevens created a novel, hybrid position for Sedillo to take advantage of Sedillo's staffing and consulting background.

16. LVS management, including Loveday, directed Sedillo to focus his efforts on big multi-million-dollar staff augmentation projects instead of selling software like LVS Account Managers.

17. On several occasions LVS' management expressed to Sedillo that the sales targets in his offer letter were inapplicable to him because of this unique, hybrid position he played.

18. Sedillo, as usual, began to impress those he worked with.

19. Alastair Woolcock ("Woolcock"), LVS' North American General Manager, called Sedillo a "stud" for the deals he was putting together.

20. Dave Frederickson ("Frederickson"), LVS' Vice President of Sales, Marketing and Business Development, described Sedillo's work as "Excellent!".

21. Despite Sedillo's early success, LVS employees and members of management harassed and discriminated against him because of his race and national origin.

22. Slurs regarding Mexican-Americans were used with impunity at LVS—no matter the topic of discussion.

23. Whether email subject lines addressed a Broncos Super Bowl victory, how difficult it is to get on a colleague's calendar, or a template to be used in a meeting, racial slurs were used to address Sedillo.

24. For example, on January 11, 2016, Loveday (General Manager of LVS' Denver office) sent an email to twelve (12) employees including Director of Human Resources Susan Neil ("Neil"), referring to Sedillo and Stevens (a Mexican American) as his "favourite hispanicals."

25. On January 24, 2016, Kris Spindler ("Spindler"), an LVS Account Manager, sent Sedillo and Stevens on an email which began "Sombrero, Hope you are alright!".

26. On February 8, 2016, Loveday sent an email to seven (7) LVS employees including Director of Human Recourses Neil, Sedillo, and Stevens, referring to a picture of Sedillo and Stevens as the "Hispanical connection."

27. Slurs and racial innuendo weren't just tolerated and doled out by management by LVS; on March 24, 2016, Shelby Lowry ("Lowry"), an LVS Account Manager, in an apparent

reference to a typographical error made by Sedillo, emailed Sedillo and Stevens regarding the error, asking if it was "[m]aybe hispanical for party?! I don't know, I only speak eng-a-lish."

28. At LVS, Sedillo was regularly asked if he was a "Mexican" or a "Mexican't."

29. The hostility, however, did not end with slurs and a hostile environment.

30. Neil targeted Sedillo for termination as soon as he arrived.

31. While Sedillo was busy growing Long View Systems' market share, Neil was busy sabotaging Sedillo's career.

32. For example, Neil responded, "I don't have to work with *your kind*," when Sedillo attempted to work with her on a large project he was heading up.

33. Neil also barred employees from supporting Sedillo's accounts, even though they were directed to do so by LVS' General Manager Martin Capurro ("Capurro").

34. Additionally, when an Account Manager left, and that employee's accounts were being distributed to LVS' remaining Account Managers, Neil ensured that Sedillo was passed over for accounts in favor of lower performing Caucasian peers.

35. And, while Sedillo's work was sometimes praised by LVS executives, Neil campaigned for his termination.

36. On November 16, 2016, Neil emailed Sedillo's supervisors (Stevens and Capurro) and claimed that any future success of Sedillo's would be attributable to "dumb luck."

37. Neil also characterized Sedillo as not "being the right AM for the office."

38. In another email on November 16, 2016, to Stevens, Neil wrote that, "[t]here is no sense in delaying the inevitable," when discussing her desire to terminate Sedillo.

39. Stevens replied to Neil's email "I'm lost … I guess managing what's best for the business doesn't matter."

40. Neil also opined that "his [Sedillo's] *type* doesn't belong here."

41. Humiliation, and fear of Neil, led Sedillo to speak individually to his supervisors (Stevens, Capurro and Woolcock) about Neil's hostility toward him.

42. Sedillo met with Stevens on several occasions about being harassed.

43. Sedillo told Stevens he was thinking about filing an EEOC complaint because of the overt racial hostility he was experiencing at LVS.

44. Stevens, a Mexican-American, told Sedillo that if either were to escalate his complaint they both would be fired.

45. As predicted, Stevens was fired by LVS shortly after Sedillo spoke to senior management about the harassment and discrimination.

46. On January 6, 2017, Sedillo met with Capurro, General Manager of the Denver office, to discuss Neil's harassment of him and the overall racial hostility he was experiencing.

47. Sedillo told Capurro that he was contemplating reporting the abuse to the EEOC.

48. That same day, January 6, 2017, Capurro emailed Frederickson and Don McLean ("McLean") Executive Vice President of Long View Systems, with the subject line "Diego Sedillo – EEO Complaint."

49. In that email, Capurro wrote that, "[h]e has a long list of concerns and issues that he believes build toward and EEO Complaint he intends to file against Long View and Susan Neil."

50. Additionally, in the "Diego Sedillo – EEO Complaint" email, Capurro wrote that he "believes that there is ground for unfair treatment and deliberate obstruction of his productivity."

51. Three days later, on January 9, 2017, Frederickson, emailed Capurro and McLean in an email titled "RE: Diego Sedillo- EEO Complaint," and stated, "Let's prepare for termination effective 15th."

52. On January 12, 2017, Sedillo received a conference call from Stevens and Morgan Maxwell ("Maxwell").

53. After the normal exchange of greetings, Stevens asked Sedillo how he was doing.

54. Sedillo responded that due to work-related stress and humiliation he was no longer able to control his drinking. Sedillo explained that he was entering a treatment facility for his alcoholism (disability).

55. Stevens wished Sedillo luck with treatment and told him they could discuss LVS issues when his treatment was over.

56. However, later that day, Maxwell inexplicably fired Sedillo by email.

57. The following day, January 13, 2017, Capurro emailed Sedillo to affirm his termination from LVS.

58. Capurro's email alleged that Sedillo failed to meet goals in his professional improvement plan ("PIP").

59. Yet, as Sedillo's direct manager attests, Sedillo *was never on a PIP*.

60. Sedillo's personnel file (subsequently produced pursuant to Colorado Statute) does not contain a PIP; in fact, Sedillo's personnel file does not contain a single pre-termination reference to poor performance.

61. To the contrary, Sedillo's personnel file contains documentation in which Sedillo was expressly told that, "your employment with Long View Systems has been terminated *without cause* effective immediately." (Emphasis added.)

62. The same letter dated January 12, 2017, stated Sedillo would receive "3 months of Long View paid COBRA premiums."

63. However, LVS reduced Sedillo's benefits after he filed his EEOC complaint.

64. LVS' reduction of Sedillo's benefits caused him to be discharged from his rehabilitation weeks early, without completing important medical treatment.

65. Sedillo was not the only employee fired by LVS for pretextual and discriminatory reasons.

66. Stevens, the only other Mexican-American in LVS' Denver office, was fired shortly after Sedillo.

## FIRST CLAM FOR RELIEF
### Race & National Origin Discrimination in Violation of Title VII

67. Sedillo hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

68. Sedillo, a Mexican American, was in a protected race and national origin class under Title VII.

Case 1:17-cv-03070-KLM   Document 1   Filed 12/19/17   USDC Colorado   Page 10 of 17

69. Long View Systems singled out Sedillo for non-existent, unsupported reasons, and then terminated him because of his race, national origin and complaints of discrimination and harassment based on his race.

70. Sedillo was fully qualified for continued employment with Long View Systems, yet was terminated.

71. Long View Systems treated Sedillo less favorably and discriminated against him by subjecting him to a hostile work environment, sabotaging his work, and terminating him for baseless and falsified reasons because of his race and national origin.

72. Long View Systems violated 42 U.S.C. §2000(a)(1) by the conduct described herein.

73. Sedillo is entitled to recover damages for the discriminatory conduct described herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.

74. As a direct and proximate result of Long View Systems' actions, Sedillo suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages.

75. The unlawful employment practices complained of above were and are intentional.

76. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Sedillo.

77. Sedillo is also entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. § 2000e-5(k).

## SECOND CLAM FOR RELIEF
### Hostile Work Environment in Violation of Title VII

78. Sedillo hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

79. Sedillo, a Mexican American, was in a protected race and national origin class under Title VII.

80. Long View Systems subjected Sedillo to slurs, insults, and other racially charged verbal comments because of his race.

81. Long View Systems' conduct was not welcomed by Sedillo.

82. Long View Systems' conduct was motivated by the fact that Sedillo is a Mexican American.

83. Long View Systems' management was aware of, tolerated, and even participated in the racially and national origin motivated misconduct.

84. Long View Systems' conduct was sufficiently severe and pervasive to alter the conditions of Sedillo's employment and create a racially abusive and hostile work environment.

85. Sedillo believed his working environment to be abusive and hostile as a result of Long View Systems' conduct.

86. A reasonable person in Sedillo's circumstances would consider the working environment to be abusive or hostile.

87. Long View Systems violated 42 U.S.C. §2000(a)(1) by the conduct described herein.

88. Sedillo is entitled to recover damages for the discriminatory conduct described herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.

89. As a direct and proximate result of Long View Systems' actions, Sedillo suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages.

### THIRD CLAIM FOR RELIEF
**Discrimination in Violation of 42 U.S.C. § 1981**

90. Sedillo hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

91. Sedillo, a Mexican American, was subjected to discrimination in his terms and conditions of employment perpetrated by Long View Systems because of his race and national origin.

92. During his employment, Sedillo was subject to repeated instances of discriminatory intimidation, ridicule, and harassment, including flagrantly false accusations regarding his work quality, unfair discipline, and termination of his employment, by Long View Systems.

93. Sedillo was fully qualified for continued employment with Long View Systems, yet was terminated.

94. Long View Systems' management was aware of and participated in the unlawful discrimination against Sedillo based on his race and national origin.

95. Long View Systems committed the unlawful employment practices with malice or with reckless indifference to Sedillo's federally protected rights. The effect of the discrimination complained of above has been to deprive Sedillo of equal employment opportunities and otherwise adversely affects his employment status.

96. Long View Systems violated 42 U.S.C. §1981 by the conduct described herein.

97. Sedillo is entitled to recover damages for the discriminatory conduct described herein pursuant to 42 U.S.C. § 1981.

98. As a direct and proximate result of Long View Systems' actions, Sedillo suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages.

99. Sedillo is also entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

**FOURTH CLAM FOR RELIEF**
**Hostile Work Environment in Violation of 42 U.S.C. § 1981**

100. Sedillo hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

101. Long View Systems subjected Sedillo to slurs, insults, and other racially charged verbal comments because of his race and national origin.

102. Long View Systems' conduct was not welcomed by Sedillo.

103. Long View Systems' conduct was motivated by the fact that Sedillo is Mexican American.

104. Long View Systems' conduct was sufficiently severe and pervasive that a reasonable person in Sedillo's position would find Sedillo's work environment to be hostile or abusive.

105. Long View Systems' management was aware of, and intentionally participated in the racially and national origin motivated misconduct

106. Sedillo believed his work environment to be hostile and abusive as a result of Long View Systems' conduct.

107. Long View Systems singled out Sedillo for non-existent, unsupported reasons and then terminated him as a result of the hostile work environment.

108. Long View Systems committed the unlawful employment practices with malice or with reckless indifference to Sedillo's federally protected rights. The effect of the discrimination complained of above has been to deprive Sedillo of equal employment opportunities and otherwise adversely affects his employment status.

109. Long View Systems violated 42 U.S.C. §1981 by the conduct described herein.

110. Sedillo is entitled to recover damages for the discriminatory conduct described herein pursuant to 42 U.S.C. §§ 1981, 1983 and 1988.

111. As a direct and proximate result of Long View Systems' actions, Sedillo suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages.

112. Sedillo is also entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

## FIFTH CLAIM FOR RELIEF
**Discrimination in Violation of Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C.A. §§ 12101,** *et seq.*

113. Sedillo hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

114. Sedillo was a protected person under the ADA at all relevant times.

115. LVS treated Sedillo less favorably than his similarly situated counterparts in the terms and conditions of his employment and by and terminating employment almost immediately after his disability was disclosed.

116. At all relevant times, Sedillo performed the functions of his job competently and was qualified for his position with Long View Systems.

117. Disability was the motivating factor in Long View Systems' decision to terminate Sedillo and Sedillo was terminated because of his disability.

118. Long View Systems' articulated reasons for Sedillo's termination is merely pretext for unlawful discrimination based on his disability.

119. Long View Systems is liable for the acts and omissions of its agents and employees, including Neil. Defendant either directly or by and through agents, discriminated against Sedillo based on his disability and caused his severe injuries, damages, and losses.

120. Long View Systems' discriminatory conduct based upon Sedillo's disability was willful and in knowing or reckless disregard of the requirements of the ADA.

121. Because of Long View Systems' violation of the ADA, Sedillo has suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and

suffering, medical expenses, loss of out of pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages.

122.   Sedillo is also entitled to liquidated damages and his attorney fees and costs for Long View Systems' violation of the ADA.

## SIXTH CLAIM FOR RELIEF
### Retaliation in Violation of Title VII

123.   Sedillo hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

124.   Sedillo participated in statutorily protected activity by opposing practices targeted at him that were unlawful under Title VII, including discrimination and harassment based on national origin,, race, and by filing and notifying Long View Systems of his EEOC complaint.

125.   As a result of Sedillo's protected opposition to discrimination, Long View Systems retaliated against him by terminating his employment soon after Sedillo made his protected opposition as described in this Complaint.

126.   Long View Systems' actions taken against Sedillo were done knowingly and intentionally or with reckless disregard of his rights.

127.   Long View Systems' conduct violated 42 U.S.C. 2000e-3(a).

128.   As a direct and proximate result of Long View Systems' actions, Sedillo has suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages.

**PRAYER FOR RELIEF**

Plaintiff, Diego Sedillo, respectfully requests that this Court enter judgment in his favor and against Defendant, Long View Systems, and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Liquidated damages as allowed;

D. Reinstatement/front pay and benefits;

E. Punitive damages as allowed;

F. Attorney fees and costs of the action, including expert witness fees, as appropriate;

G. Pre-judgment and post-judgment interest at the highest lawful rate; and

H. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 19th day of December 2017.

By: */s/ Meghan W. Martinez*
Meghan W. Martinez
MARTINEZ LAW GROUP, P.C.
720 South Colorado Blvd.
South Tower, Suite 1020
Denver, CO 80246
Telephone: (303) 597-4000
Facsimile: (303) 597-4001
martinez@mlgrouppc.com

ATTORNEY FOR PLAINTIFF