IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03070-KLM

DIEGO SEDILLO,

     Plaintiff,

v.

LONG VIEW SYSTEMS CO. (USA),

     Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Plaintiff's **Motion for Attorney Fees and Non-Taxable Expenses** [#88] (the "Motion").[1]  Defendant filed a Response [#90] in opposition to the Motion [#88], Plaintiff filed a Reply [#97], and Defendant filed a Surreply [#111].  *See Minute Order* [#109].  The Court has reviewed the briefs, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#88] is **GRANTED in part and DENIED in part**.

## I.  Background

     There have been extensive filings by the parties, but the dispute is summarized as follows: Plaintiff initially brought seven claims against Defendant, his former employer, and sought $3.5 million in damages.  The claims asserted discrimination, hostile work

_____

[1]  "[#88]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

-1-

environment, and retaliatory termination. The Court dismissed one of Plaintiff's claims on summary judgment, and a jury found for Defendant on four more. Ultimately, Plaintiff succeeded on two hostile work environment claims and was awarded a total of $50,000 in emotional distress damages. In the present Motion [#88] and Reply [#97], Plaintiff requests $431,172.50.00 in attorneys' fees[2] and $14,251.64 in non-taxable expenses. *Reply* [#97] at 20.

## II. Analysis

### A. Non-Taxable Expenses

Plaintiff requests $14,251.64 for his expert economic witness's fee. *Reply* [#97] at 10. Under 42 U.S.C. § 1988, courts may award reasonable fees for expert witness testimony when the testimony was "reasonably necessary." *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983) (*overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)) (holding that "incidental and necessary expenses incurred in furnishing effective and competent representation" are part of a "reasonable attorney's fee"). To determine whether an expert witness's fee is recoverable as part of an award of attorneys's fees, the "reasonably necessary" standard is applied flexibly. *Bruno v. W. Elec. Co.*, 618 F. Supp. 398, 406 (D. Colo. 1985). "An expert witness is 'reasonably necessary' to the case if, at the time he or she is retained, the testimony constitutes a vital and integral part of the preparation of the case." *Id.*

Defendant argues that Plaintiff should not be able to recover fees for his economic

---

[2] Plaintiff initially requested $418,720.00 in attorneys' fees in the Motion [#88], and asks for an additional $12,452.50 for attorneys' fees accumulated since that time. *Motion* [#86] at 4; *Reply* [#97] at 2 n.2.

expert, because the expert's testimony did not advance Plaintiff's successful harassment claims, and because the jury did not award Plaintiff any economic damages. *Response* [#90] at 8. In reply, Plaintiff argues that the expert's fee should be included in the fee award because the expert provided Plaintiff's "unemployment and salary information," evidence Plaintiff argues is "inseparable from the matter as a whole." *Reply* [#97] at 10-11.

By making arguments about whether the expert witness's testimony was reasonably necessary in light of the trial outcome, the parties miss the mark. The time at which it must be determined whether it was reasonable to employ the expert is "the time [at which] he or she is retained." *Bruno*, 618 F. Supp. at 406. Plaintiff retained his economic expert witness to assist with presenting his discrimination and hostile work environment claims at trial. Plaintiff brought these claims under Title VII and 42 U.S.C. § 1981, which authorize economic damages awards for prevailing plaintiffs. *See Reply* [#97] at 10. In her testimony, Plaintiff's expert witness opined that Plaintiff's economic damages approached $3.5 million and described a theory of economic recovery, *Response* [#90] at 8, evidence that Title VII plaintiffs routinely present through expert witness testimony. *See, e.g.*, *Gansert v. Colorado*, 348 F. Supp. 2d 1215, 1228 (D. Colo. 2004); *Thornton v. Kaplan*, 961 F. Supp. 1433, 1436-37 (D. Colo. 1996); *Deghand v. Wal-Mart Stores, Inc.*, 980 F. Supp. 1176, 1181 (D. Kan. 1997). Because Plaintiff's employment of his expert witness was reasonable prior to and during trial, the fate of Plaintiff's discrimination claims should not foreclose his recovery of those expenses. *See Thomas v. Cummins Engine Co., Inc.*, No. 13-cv-2587-WJM-KMT, 2015 WL 7294573, at *4 (D. Colo. Nov. 19, 2015) (finding that discovery depositions that were never used at trial were "reasonably necessary" because at the time they were conducted, the plaintiff expected that the witnesses would testify at

trial); *Burt v. Manville Sales Corp.*, 706 F. Supp. 755, 758 (D. Colo. 1988) ("it is incongruous to expect counsel to reasonably prepare for litigation and then punish [him] if depositions are not actually admitted into evidence at trial").

Accordingly, the Court **grants** the Motion [#88] to the extent Plaintiff seeks non-taxable expenses.

## B.    Attorneys' Fees

Plaintiff requests $431,172.50 in attorneys' fees.  *Pl.'s Ex. 3* [#97-3] ¶ 7.  Pursuant to D.C.COLO.LCivR 54.3(b), a party seeking attorney's fees must provide "a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed," and "a summary of the relevant qualifications and experience" for "each person for whom fees are claimed."  To determine a reasonable fee, the Court begins by calculating the "lodestar amount."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998); *see also Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992) (recognizing that the lodestar amount is presumptively reasonable).  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Nevertheless, a party seeking an award of attorneys' fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).  The Court is not required to reach a lodestar determination in every instance and may accept or reduce a fee request within its discretion.  *Hensley*, 461 U.S. at 436-37.

### 1.    Lodestar

Here, Plaintiff requests a lodestar amount of $418,720.00 based on 1,405.2 hours of work prior to May 23, 2019. *Reply* [#97] at 4. In addition, Plaintiff requests $12,452.50 in fees for 38.2 hours of work from May 23, 2019, to July 3, 2019, for time spent "researching and drafting the Reply, briefing the Defendant's objection to the Clerk's award of costs to Plaintiff, and addressing matters related to the Judgment." *Pl.'s Ex. 3* [#97-3] ¶¶ 7-8. Defendant contends that some of Plaintiff's counsel's billing rates are too high, that the number of hours claimed by Plaintiff's counsel are excessive, and finally that Plaintiff is not entitled to the additional fees he requests in his Reply for time spent in connection with work performed after the present Motion [#88] was filed. *Response* [#90] at 11; *Surreply* [#111] at 2.

### a. Rates

A party seeking an award of attorneys' fees must establish the reasonableness of each dollar for which the party seeks an award. *Bangerter*, 61 F.3d at 1510. A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). "If the district court does not have adequate evidence of prevailing market rates for attorney fees, . . . [a] district judge may consider his or her 'own knowledge of prevailing market rates as well as other indicia of a reasonable market rate.'" *Martinez v. Red's Towing*, No. 14-cv-00458-KLM, 2015 WL 4504775, at *3 (D. Colo. July 23, 2015) (quoting

*Reichers v. Del. Asset Mgmt.*, No. 13-cv-02171-CMA-CBS, 2013 WL 6096136, at *3 (D. Colo. Nov. 20, 2013)).

Plaintiff's counsel's billing rates ranged from $95 for a law clerk to $475 for lead counsel, which Plaintiff argues are reasonable and correspond with the rates of similar attorneys in the Denver area. *Reply* [#97] at 4-5.

Defendant asserts that some of Plaintiff's counsel's billing rates are excessive. *See Response* [#90] at 4, 5. Defendant argues that the hourly rate for Plaintiff's lead counsel, Ms. Meghan Martinez, should be decreased from her progressive rates of $425 in 2017, $450 in 2018, and $475 in 2019 to a rate of $380 for all three years. *Id.* at 4. Ms. Martinez is the founding partner of the Martinez Law Group (MLG), a specialty employment law firm in Denver. *Pl.'s Ex. 4* [#97-5] ¶ 8. Plaintiff does not provide Ms. Martinez's years of experience, *see Pl.'s Ex. 3* [#97-3]; *Pl.'s Ex. 4* [#97-5], but Ms. Martinez was a partner at a different law firm in Denver prior to founding MLG and has previously been recognized as *Best Lawyers' Denver Employment Lawyer - Management* "Lawyer of the Year." *Pl.'s Ex. 3* [#97-3] ¶ 4; *Pl.'s Ex. 4* [#97-5] ¶ 8.

Defendant also argues that the hourly rates of certain associate attorneys should be decreased. *Response* [#90] at 5-6. Specifically, Defendant argues that Ms. Christina Bahr's ("Bahr") rate should be decreased from $285 to $250, that Ms. Dayna Dowdy's ("Dowdy") rate should be decreased from $285 to $250, that Mr. Glen Matthews's ("Matthews") rate should be decreased from $285 to $200, that Ms. Arielle Berens's ("Berens") rate should be decreased from $240 to $193, and finally that Ms. Sarah Nolan's ("Nolan") rate should be decreased from $240 to $193. *Id.*; *Reply* [#97] at 4; *Surreply* [#111] at 3-4. In 2019, the year this case was litigated, Ms. Bahr had fourteen years of

experience, Ms. Dowdy had twelve years of experience, Mr. Matthews had three-to-four years of experience, and Ms. Berens had one-to-two years of experience. *Pl.'s Ex. 4* [#97-5]. Ms. Nolan, who joined MLG after the trial and assisted only with post-judgment matters, has more than two years of clerkship experience.[3] *Pl.'s Ex. 3* [#97-3] ¶ 9. Defendant does not contest the rates of attorney Elizabeth Mabey, paralegals Andrea Avila, Beth Reinhardt, Charles Early, and Sheila Kelly, or of law clerk Nyah Francis, all of whom also contributed hours to Plaintiff's case. *See Reply* [#97] at 4; *Response* [#90] at 5-6.

Defendant's arguments are based on the rates listed in the Colorado Bar Association's 2017 Economics of Law Practice Survey (the "CBA Survey"), which calculates the average billing rates for Colorado attorneys based on practice area and location. *See Response* [#90] at 4-5. For example, the CBA Survey states that the 75th percentile of billing rates for management-side employment attorneys is $381. *Def.'s Ex. 1* [#90-1] at 36. Based on that figure, Defendant argues that the rate for Plaintiff's lead counsel should be set at $380. *Response* [#90] at 5.

---

[3] Defendant argues that Plaintiff overestimates the years of experience attributable to three of Plaintiff's lawyers. *Surreply* [#111] at 3 n.2. Specifically, Defendant contends that Mr. Matthews should be attributed two years of experience rather than three, that Ms. Sarah Nolan should be attributed one year of experience rather than "more than two," and that Ms. Berens should be attributed one year of experience rather than two. *Id.*; *Reply* [#97] at 7-8. The Court declines to further address this argument for two reasons. First, the Court reviews Plaintiff's counsel's billing rates in light of the "reasonable rates for attorneys with similar experience in the Denver area," a standard that does not require the Court to delve into the precise number of years or months an attorney has been practicing. *See generally Home Loan Inv. Co. v. St. Paul Ins. Co.*, 78 F. Supp. 3d 1307, 1317-20 (D. Colo. 2014) (discussing the prevailing rates for attorneys in Colorado). Second, while it may be possible to calculate the disputed amount that corresponds to the parties' disagreement regarding Plaintiff's counsel's years of experience, the Court declines to engage in such hair-splitting. *Stauffer v. NCC Bus. Servs.*, No. 13-cv-00243-PAB-KLM, 2013 WL 2444827, at *3 (D. Colo. 2013) (stating that "the Court 'need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection'").

Plaintiff, on the other hand, argues that the hourly rates are reasonable considering his counsel's experience and the rates of similar attorneys in the Denver area. *Reply* [#97] at 6-7. Plaintiff contends that his lead counsel should not be restricted from charging rates above the 75th percentile simply because the CBA Survey omits data from higher percentiles. *Id.* at 6. Plaintiff argues that because the CBA Survey is based on data from 2016, the rates are outdated and therefore do not accurately reflect the current rates for attorneys in the Denver area. *Id.* at 7 (citing *McGrath v. Cent. Masonry Corp.*, No. 06-cv-00224-CMA-CBS, 2010 WL 11549416, at *5 (D. Colo. Feb. 26, 2010) (finding the CBA Survey's 2008 rates "inapplicable" to a 2010 rate dispute). In addition, Plaintiff provides an affidavit from retired Denver District Court Judge Herbert L. Stern ("Judge Stern") in which Judge Stern confirms that the rates for Plaintiff's counsel are reasonable and consistent with those of the Denver market. *Pl.'s Ex. 4* [#97-5] ¶¶ 4, 7-14. Finally, Plaintiff also provides an affidavit from Ms. Martinez, in which she describes her experience and states that a private arbitrator approved a billing rate of $450 per hour for her time in 2017. *Pl.'s Ex. 3* [#97-3] ¶ 5.

As was previously noted, the Court calculates fees based on the prevailing rates in the Denver metropolitan area. *See Scadden v. Weinberg, Stein & Assoc., LLC*, No. 12-cv-02454-PAB-MEH, 2013 WL 1751294, at *5 (D. Colo. Apr. 23, 2013). Based on the Court's experience, as well as the evidence and case law provided by the parties, the Court finds that the hourly billing rates claimed by Plaintiff's counsel are reasonable for attorneys with similar experience in the Denver metropolitan area. *See generally Home Loan Inv. Co.*, 78 F. Supp. 3d at 1317-20 (discussing the prevailing rates for attorneys in Colorado). Because this case was litigated in 2019, the CBA Survey rates from 2016 are slightly outdated and

merely serve as guideposts. *McGrath*, 2010 WL 11549416, at *5. Therefore, based on the affidavit of Judge Stern[4] and on the Court's own experience with billing rates in the Denver area, the Court finds that Plaintiff's counsel's billing rates are comparable to those of attorneys in the area who have similar experience. *Pl.'s Ex. 4* [#97-5] ¶¶ 4, 7-14; *see also Crew Tile Distrib., Inc. v. Porcelanosa Los Angeles, Inc.*, No. 13-cv-03206-WJM-KMT, 2015 WL 5608122, at *3 (D. Colo. Sept. 24, 2015) (finding that $585 per hour was reasonable for a partner with thirty-seven years of experience, that $450 per hour was reasonable for a partner with nineteen years of experience, and that $250 per hour was reasonable for an associate with five years of experience).

Accordingly, the Court finds that Plaintiff's counsel's billing rates are reasonable.

### b. Hours

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos*, 713 F.2d at 554. The burden is on the party requesting fees to prove that

---

[4] Defendant objects to the use of "self-serving affidavits" as evidence of what constitutes a reasonable billing rate. *Surreply* [#111] at 4. Characterizing Judge Stern's affidavit as "self-serving" is inaccurate, because Judge Stern is not a party in these proceedings. *Cf. Ortega v. Denver Institute L.L.C.*, No. 14-cv-01351-MEH, 2015 WL 4576976, at *10 (D. Colo. July 30, 2015) (characterizing a plaintiff's declaration that she wrote after her deposition as a "self-serving affidavit").

its counsel exercised proper billing judgment. *Case*, 157 F.3d at 1250 ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."). Therefore, the party claiming fees must make a good faith effort "to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, No. 08-cv-01114-RPM-MEH, 2009 WL 765872, at *7 (D. Colo. Mar. 20, 2009).

Here, Defendant urges the Court to eliminate hours spent by Plaintiff's counsel in a pre-litigation mediation, by Plaintiff's counsel's paralegals that are "excessive and/or duplicative," and by Plaintiff's counsel in connection with post-trial motions practice. *Response* [#90] at 3, 6-8; *Surreply* [#111] at 2.

## I.    Mediation

Plaintiff requests reimbursement for his counsel's hours spent in preparation for a pre-trial mediation, and for hours spent at the mediation on November 30, 2017. *Response* [#90] at 6. Because Plaintiff filed his Complaint [#1] in this lawsuit on December 19, 2017, Defendant argues that the mediation was an optional proceeding that failed to help resolve the case. *Id.* at 6-7. Defendant further contends that because "Title VII does not permit fee recovery for optional pre-litigation proceedings," and because fee recovery under § 1988 is only available "if the proceeding is 'useful and . . . necessary to secure the final result obtained at litigation,'" it follows that Plaintiff cannot recover fees for an optional mediation that was not necessary to secure Plaintiff's two successful claims. *Id.* (citing *Barrett v. Salt*

*Lake Cty.*, 754 F.3d 864, 871 (10th Cir. 2014)).  Therefore, Defendant requests that the Court eliminate the mediation hours from its calculation.  *Id.* at 7.

In response, Plaintiff argues that although the mediation technically occurred before this lawsuit was filed, it was not a pre-litigation proceeding because the mediation happened after Plaintiff filed his discrimination charge with the EEOC, and because the parties conducted the mediation in anticipation of the instant litigation.  *Reply* [#97] at 8. Plaintiff also points to other courts that have awarded fees for mediation hours, *see Evans v. Brooks-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014); *Lintz v. Am. Gen. Fin.*, 87 F. Supp. 2d 1161, 1168-69 (D. Kan. 2000), and argues that failing to award fees for mediation hours "might discourage counsel for plaintiffs from exploring settlement possibilities." *Reply* [#97] at 9 (quoting *Lintz*, 87 F. Supp. 2d at 1169).  Therefore, Plaintiff argues that the mediation hours should be included in the lodestar calculation.  *Id.*

At the outset, the Court notes that the Tenth Circuit has suggested that claims for the recovery of mediation expenses are evaluated using different standards under Title VII and 42 U.S.C. § 1988.  *See Barret*, 754 F.3d at 870.  Here, Plaintiff has prevailed on claims under both statutes.  *Response* [#90] at 1-2.

Title VII plaintiffs may not recover expenses for participation in optional pre-litigation processes.  *Barret*, 754 F.3d at 870.  Therefore, with regard to Plaintiff's Title VII claim, because the mediation occurred before Plaintiff filed his Complaint [#1], the important question is whether the mediation was optional.  *Id.* at 871; *see also Manders v. Okla. ex rel. Dep't of Mental Health*, 875 F.2d 263, 267 (10th Cir. 1989) (allowing fees under Title VII for "those proceedings which are a prerequisite to a court action").  Defendant contends the mediation was optional, *Response* [#90] at 6, a point Plaintiff does not challenge.  *See*

*Reply* [#97] at 8-9.  As noted above, Plaintiff may not recover mediation expenses under Title VII for optional pre-trial proceedings, so it follows that Plaintiff cannot recover for any mediation-related hours even though he succeeded on his Title VII claim.

Although Title VII plaintiffs may not recover for expenses for participation in optional pre-litigation processes, the Supreme Court has "suggested that § 1988 *does* allow district courts to award attorney fees for work in conjunction with optional pre-trial proceedings." *Barret*, 754 F.3d at 870.   Therefore, with regard to Plaintiff's § 1988 claim, the question is whether the mediation was "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation."  *Id.* (quoting *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 561).  The Court finds that Plaintiff has failed to show why the mediation was "useful and of a type ordinarily necessary" to advance his case.  *Id.*  Plaintiff merely asserts that because he "was not responsible for the failure of the mediation, [ ] he should be compensated for the attorney fees incurred in participating."  *Reply* [#97] at 9.  Yet, assigning responsibility for the mediation's failure is a different task from showing that the mediation was useful and necessary.  *See Barrett*, 754 F.3d at 871 (holding that a "conclusory assertion" that an optional pre-trial procedure was useful and necessary is insufficient in the absence of "record facts or legal authority").

Finally, the Court disagrees with Plaintiff's contention that withholding fees would discourage settlements.  *Reply* [#97] at 9.  Because fees are available for mediations that are useful and necessary, attorneys have an incentive to make the most of mediation.  *See Manders*, 875 F.2d at 267 (discussing with approval the "public policy of encouraging employers to provide informal resolutions to discrimination in the work environment").  On the other hand, automatically awarding fees in these mediations would discourage private

and public employers from participating, thereby reducing the prospect of voluntary settlement. *Id.*

Accordingly, the Court finds that Plaintiff may not recover fees for the 63.1 total hours[5] Plaintiff's counsel spent preparing for and participating in the pretrial mediation.

### ii.    Paralegals

Defendant next contends that the hours Plaintiff requests for work done by his counsel's paralegals are excessive. *Response* [#90] at 7. Defendant requests that Paralegal Charles Early's ("Early") hours be reduced by 17.75 hours, from 162.1 to 144.35, and that Paralegal Beth Reinhardt's ("Reinhardt") hours be reduced by 28.7 hours, from 235.7 to 207, for a combined total reduction of 46.45 hours. *Id.* at 11. In support of these reductions, Defendant first notes that Mr. Early spent 4.4 hours reviewing the amended scheduling order and docketing deadlines, a task Defendant argues can reasonably be accomplished in fifteen minutes. *Id.* at 7. On that basis, Defendant would reduce Early's review time by 4.15 hours. *See id.* Plaintiff has failed to directly respond to Defendant's contention that the amount of time Mr. Early spent reviewing the amended scheduling order and docket deadlines was excessive. *See Reply* [#97] at 8-11. In light of Plaintiff's failure to provide a reasonable explanation for those hours, Defendant's contention that "[t]he scheduling order in this case was not unique," and that "such a task could be completed

---

[5]    Because the Court finds that the mediation was not useful or necessary, it has not addressed the reasonableness of the number of hours claimed by Plaintiff for his counsel's mediation-related activities. Although the Court is skeptical, based on a review of Plaintiff's counsel's billing records, that 63.1 hours is reasonable, Defendant has not chosen to dispute this number. *See Response* [#90] at 6-7; *see, e.g.*, *Lintz*, 87 F. Supp. 2d at 1169 (finding that 34.3 hours was excessive for "researching mediators, discussing case evaluation[,] and preparing for [a] mediation," and allowing the plaintiff to recover for only 20.1 hours).

in fifteen minutes," *Response* [#90] at 7, and this court's own experience, the Court reduces the hours billed by Mr. Early by 4.15 hours.

Defendant also argues that the 63.3 hours that Paralegals Early and Reinhardt spent searching for names and racial slurs in produced documents could have been accomplished in a third of the time. *Id.* On that basis, Defendant asks the Court to reduce the paralegals' search time by 42.3 hours. *See id.* Plaintiff, meanwhile, argues that the hours should not be reduced because they accurately reflect the time that was required to search produced documents during discovery and review the docket. *Reply* [#97] at 9-10. In addition, Plaintiff argues that the paralegals spent considerable time identifying missing emails and obtaining them from Defendant's counsel. *Id.* at 10. Plaintiff contends that part of the reason why the discovery searches consumed so much time is because there were significant errors in the documents that Defendant produced. *Id.* at 9-10; *see Pl.'s Ex. 7* [#97-8]; *Pl.'s Ex. 8* [#97-9].

The Court notes that Defendant contests the time spent searching the produced documents themselves, not the time spent attempting to obtain the documents from Defendant. *Response* [#90] at 7. The Court also notes that 63.3 hours is a considerable amount of time. Nevertheless, a review of Plaintiff's timekeeping records indicates that Plaintiff's counsel's searches of the produced documents occurred concurrently with communication between the parties regarding missing documents, and with Plaintiff's counsel's analysis of the produced documents, *see Def.'s Ex. 4* [#90-4], so it is misleading to characterize all 63.3 hours as excessive "search time." *See Reich v. Am. Family Mut. Ins. Co.*, No. 14-cv-01482-KLM, 2016 WL 1258589, at *4 (D. Colo. Mar. 31, 2016) (holding that 51 hours spent by the plaintiff's attorneys on "continued trial prep document review and

strategizing" prior to a jury trial involving two claims was reasonable).  Moreover, as Defendant acknowledges, a prevailing party's choice of billing practices does not prevent it from recovering attorneys' fees, and Defendant has offered no evidence in support of its assertion that the searching could have been accomplished in one-third of the time. *Response* [#90] at 7-8.  For those reasons, the Court will not reduce the hours that Plaintiff claims were spent searching the produced documents by "an arbitrary percentage."  *See Robinson*, 160 F.3d at 1281.

### iii.    Hours for Post-Trial Motions Practice

Plaintiff requests $12,452.50 for his counsel's work preparing and defending the present Motion [#88] for fees and non-taxable expenses, and for briefing Defendant's objection to the Clerk's award of costs.  *See Reply* [#97] at 4; *Pl.'s Ex. 3-A* [#97-4]; *Pl.'s Ex. 3* [#93-3] ¶¶ 7-8.  In the Tenth Circuit, parties are "entitled to recover fees for post-judgment work or for post-judgment monitoring when [they have] succeeded on 'any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *O Centro Espirita Beneficente União Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1079 (D.N.M 2018) (quoting *Joseph A. by Wolfe v. N.M. Dep't of Human Servs.*, 28 F.3d 1056, 1059 (10th Cir. 1994)).  This standard is met by post-judgment work that "contribute[s] to the plaintiff obtaining the remedy the court ordered."  *Id.*; *Karnes v. SCI Colo. Funeral Servs., Inc.*, No. 97-1212, 1998 WL 879479 at *4 (10th Cir. Dec. 17, 1998).

Here, Defendant's sole basis for opposing Plaintiff's request for attorneys' fees following May 23, 2019, is that the request is untimely.  *Surreply* [#111] at 2.  The Court finds that the case cited by Defendant in support of this argument can be distinguished from the matter at hand.  *See id.* (citing *King v. Midland Credit Mgmt.*, No. 11-cv-02808-

CMA-BNB, 2013 WL 2236934 (D. Colo. May 21, 2013)).  In *King*, the court found that the plaintiff's motion for fees was untimely, and denied the motion accordingly, because the plaintiff failed to "include a request for, and 'fair estimate' of, such fees in her initial motion." 2013 WL 2236934 , at *3 (quoting *Gash v. Client Servs.*, No. 12-cv-01426-LTB-MJW, 2013 WL 1130717, at *4 (D. Colo. Mar. 18, 2013)).  Here, by contrast, Plaintiff timely filed his original Motion [#88] for attorneys' fees and included in his Reply [#97] an accounting of how his counsel allocated time while litigating the attorneys' fees, non-taxable expenses, and costs issues.  *Pl.'s Ex. 3-A* [#97-4].  Therefore, the risk that concerned the *King* court—that a plaintiff could include "boilerplate" language in a motion for fees and then "continually ask for continued work in replying to [his] own motions"—is not present.  *See King*, 2013 WL 2236934 , at *2-3 (quoting *Gash*, 2013 WL 1130717, at *4).

Furthermore, the Court finds that fees for post-judgment work are appropriate because Plaintiff prevailed on a "significant issue in litigation" that "achieve[d] some of the benefit [he] sought in bringing the suit."  *See O Centro Espirita Beneficente União Do Vegetal in U.S.*, 343 F. Supp. 3d at 1079 (quoting *Joseph A. by Wolfe*, 28 F.3d at 1059).  Here, Plaintiff is a prevailing civil rights plaintiff who is entitled to attorneys' fees.  *Id.*; 42 U.S.C. § 1988(b).  Because attorneys' fees are part of the relief that Plaintiff is owed as a result of the Court's prior Judgment [#77], Plaintiff's defense of its Motion [#88] cannot be considered unreasonable.  *Glass v. Pfeffer*, 849 F.2d 1261, 1266 n.3 (10th Cir. 1988) ("It is obviously fair to grant a fee for time spent litigating the fee issue, since it is the adversary who made the additional work necessary.") (quoting *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 54 n.8 (3d Cir. 1978)); *see also Karnes*, 1998 WL 879479 at *4 (granting a prevailing Title

VII plaintiff's post-judgment fees and costs for time spent preparing a response motion in support of her initial request for attorneys' fees and costs).

For the reasons set forth above, the Court permits Plaintiff his attorneys' fees for his counsel's time spent defending the initial Motion [#88] and responding to Defendant's Motion for Review of Clerk's Taxation of Costs [#89] after May 23, 2019. Accordingly, $12,452.50 is added to the total lodestar.

### c. Lodestar Calculation

Plaintiff requested $418,720.00 in attorneys' fees for his counsel's hours prior to May 23, 2019 in his initial Motion [#88]. *See Motion* [#86] at 2. For the aforementioned reasons, the Court deducts from the lodestar the following amounts: (1) $622.50 for the 4.15 hours Paralegal Early spent reviewing the docket and scheduling order at his $150 rate; (2) $7,522.50 for the 17.7 hours that Ms. Martinez spent in mediation at her $425 rate in 2017, which is when the mediation took place; and finally (3) $12,882.00 for the 45.2 hours that Mr. Matthews spent in mediation at his $285 rate. These reductions amount to a total reduction of $21,027.00, which brings the total lodestar prior to May 23, 2019, to $397,693.00.

To that amount, the Court adds $12,452.50 for Plaintiff's counsel's fees between May 23, 2019, and July 3, 2019. Therefore, the total lodestar amounts to $410,145.50. Having calculated the total lodestar, the Court now turns to Defendant's argument that Plaintiff's attorneys' fees should not reflect the full lodestar amount due to Plaintiff's limited success at trial.

### 2. Lodestar Adjustment

"Where a plaintiff has obtained excellent results," awarding the plaintiff the full lodestar amount as a fee award is justified. *Hensley*, 461 U.S. at 435. "If, on the other hand, a plaintiff has achieved only partial success, [the lodestar] may be an excessive amount." *Id.* "When a party prevails on only certain claims, the Court applies a two-part framework to determine a reasonable fee award." *Christos v. Halker Consulting, LLC*, No. 16-cv-01838-PAB-NYW, 2019 WL 3778278, at *6 (D. Colo. Aug. 12, 2019) (citing *R. M-G. v. Bd. of Educ. for the Las Vegas City Sch.*, 645 F. App'x 672, 676 (10th Cir. 2016). First, the Court determines whether the successful and unsuccessful claims are related. *Id.* If the claims that the plaintiff lost were unrelated to the plaintiff's successful claims, "the unrelated claims must 'be treated as if they had been raised in separate lawsuits, and . . . no fee may be awarded for services on the unsuccessful claim.'" *Id.* (quoting *Hensley*, 461 U.S. at 435).

If the claims were related, then the next step is to weigh "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. "Although '[t]here is no precise rule or formula' for assessing the plaintiff's degree of success, '[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.'" *Flitton v. Primary Residential Mortg.*, 614 F.3d 1173, 1177-78 (10th Cir. 2010) (citing *Hensley*, 461 U.S. at 436, 440.) In weighing the significance of the relief to the litigation as a whole, the Court exercises equitable discretion and does not "apportion the fee award mechanically" on an issue-by-issue basis. *Hensley*, 461 U.S. at 438. Rather, the Court considers each claimed expense and determines its reasonableness overall. *Id.* at 436-40 (holding that the Court "should make clear that it has considered the relationship between

the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute); *Doe ex rel. Doe v. Keala*, 361 F. Supp. 2d 1171, 1187 (D. Haw. 2005) (reducing hours reported by plaintiff's counsel by fifty-five percent to account for the plaintiff's lack of success against certain defendants and the low damages award which, "[m]easured against the years of litigation, the considerable amount of resources expended on th[e] case, and Plaintiffs' (and their counsels') expectations," represented a "substantial defeat").

Here, Defendant argues that the lodestar amount should be reduced by eighty percent because Plaintiff advanced seven claims and sought $3.5 million in damages, yet he only succeeded on two hostile environment claims and received merely $50,000 in damages. *Response* [#90] at 8-9, 11. Meanwhile, Plaintiff argues that he "achieved substantial success on his claims . . . and his fee award should reflect that." *Reply* [#97] at 12. As discussed below, the Court agrees with Defendant to the extent that the lodestar should be reduced by some amount to reflect Plaintiff's limited success.

### a.    Technical Success

In Defendant's Response [#90] to the present Motion [#88], Defendant argued that Plaintiff's fee award should be reduced due to Plaintiff's limited success under the factors set forth in *Farrar v. Hobby*. *Response* [#90] at 3 (citing 506 U.S. 103, 120-22 (1992) (O'Connor, J., concurring)). Plaintiff, in his Reply [#97], correctly notes that the *Farrar* factors come into play only when a plaintiff has received nominal damages at trial, *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229 (10th Cir. 2001), and argues that Defendant's

admission that Plaintiff's $50,000 damage award is "not 'nominal'" therefore renders its argument inconsistent. *Reply* [#97] at 12-13; *see Response* [#90] at 9. Defendant, in its Surreply [#111], maintains that Plaintiff's fee award should be reduced, but Defendant does not cite to *Farrar* for its limited success argument, does not argue with Plaintiff's characterization of its prior argument as inconsistent, and does not reassert an argument that Plaintiff's victory at trial was technical. To the extent there is any remaining disagreement regarding whether Plaintiff's victory at trial was technical, the Court finds the Plaintiff's success on two hostile work environment claims and $50,000 damage award was not technical. Therefore, Plaintiff is entitled to recover a reasonable attorneys' fees award. *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012).

### b. Limited Success

As noted, the Court conducts a two-part test to determine what fees are reasonable. *See Christos*, 2019 WL 3778278, at *6; *R. M-G.*, 645 F. App'x at 676. The first step is evaluating whether Plaintiff lost "on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. "[C]laims are related if they are based on a common core of facts" or "related legal theories." *Flitton*, 614 F.3d at 1177 (citing *Bangerter*, 61 F.3d at 1512). "Claims are unrelated if they are 'based on different facts and legal theories.'" *Zinna v. Congrove*, No. 05-cv-01016-PAB, 2019 WL 1236725, at *7 (D. Colo. Mar. 18, 2019) (quoting *Hensley*, 461 U.S. at 434). Moreover, claims are not unrelated when they "arose out of the same incident and the fruits of such investigation might have been useful in proving the underlying claim." *Id.* (quotation omitted).

Here, although some of Plaintiff's claims are based on separate facts and legal theories, the core of Plaintiff's claims centered on his employment with Defendant and how

he was treated at work.  *Reply* [#97] at 15.  While the claims involve some distinct legal theories, they share common core facts, so they are sufficiently related for the purpose of determining reasonable fees.  *See Christos*, 2019 WL 3778278, at *6 (finding that a plaintiff's claims for Title VII discrimination, Title VII retaliation, and intentional interference with contract were related to her claim for FMLA interference because they all "concerned the reason for plaintiff's inclusion in [a] company-wide layoff"); *Flitton*, 614 F.3d at 1177 (finding a plaintiff's successful retaliation claim was related to her unsuccessful discrimination and punitive damages claims because they each concerned the reason for her termination); *see also M.S. ex rel. J.S. v. Utah Schs. for Deaf & Blind*, 822 F.3d 1128, 1138 (10th Cir. 2016) (stating that cases "involving truly unrelated claims . . . are unlikely to arise with great frequency").

With that in mind, the Court moves to the second step in the inquiry and considers "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 434; *see also Flitton*, 614 F.3d at 1178 ("[A] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole").  As Plaintiff acknowledges, because his claims are related, it is difficult to distinguish the time Plaintiff's counsel spent on his unsuccessful claims from the time spent on the successful hostile work environment claims.  *Reply* [#97] at 16.  For that reason, the Court must "consider the significance of the overall relief obtained by [P]laintiff in relation to the hours reasonably expended on the litigation[,]" and adjust the lodestar by a percentage amount.  *Hensley*, 461 U.S. at 434, 436-37; *see also Zinna*, 2019 WL 1236725, at *8 ("Where . . . it is difficult to identify the number of hours expended on a particular claim, courts have reduced the plaintiff's fee

award by a percentage amount."). *Compare Chavez v. Stomp*, No. 10-205 JCH/ACT, 2014 WL 12796784, at *9 (D.N.M. Feb. 27, 2014) (reducing the lodestar by less than ten percent where the plaintiff "succeeded on a relatively important claim . . . and achieved a significant damages award."), *with Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1208 (10th Cir. 2015) (reducing the lodestar by forty percent where the plaintiff prevailed on a retaliation claim but was unsuccessful on discrimination claims), *and Milham v. Perez*, No. 03-cv-00702-MSK-MJW, 2005 WL 1925770, at *4 (D. Colo. Apr. 11, 2005) (reducing lodestar by fifty percent where "counsel's billing records [were] not so granular" as to allow the court to "make a precise finding as to what times were spent developing what claims.").

Here, Plaintiff argues that "[t]here is no indication that [his] counsel engaged in any more work than was necessary to achieve [his] positive result." *Reply* [#97] at 19. On the other hand, Defendant argues that "Plaintiff failed to prevail on his primary theory of liability, and the claims (five of seven) undisputedly occupied much of counsel's time in this case," so the lodestar should be reduced by eighty percent. *Response* [#90] at 10.

The Court finds that the lodestar should be reduced because Plaintiff's counsel spent a significant amount of time on unsuccessful claims. Although Plaintiff contends that he is not attempting to recover fees for any more hours than those his counsel devoted to his successful hostile work environment claims, that argument is hard to swallow. *Reply* [#97] at 19. As has been previously noted, some of Plaintiff's claims involved distinct legal theories. If the time spent by Plaintiff's counsel was all dedicated to the successful claims, then Plaintiff would not have been able to pursue separate legal arguments. It follows that not all of Plaintiff's counsel's time was spent pursuing the two successful claims.

Moreover, the successful hostile work environment claims were based largely on irrefutable—and irrefuted—emails written by Plaintiff's co-workers, as well as favorable testimony by Plaintiff's former supervisor. Although Plaintiff asserts that paralegals spent 63.3 hours searching Defendant's documents for damning evidence (*see page 14, supra*), Plaintiff himself surely could have provided much of this information, as he was included in virtually every inappropriate email. Regardless, counsel has not argued that the evidence supporting the hostile work environment claims was subtle, complex or difficult to present and explain to the jury. Based on my experience in employment litigation, this evidence was remarkably straightforward, and as a result, counsel's overall efforts in presenting this claim should have been much less involved than her efforts in attempting to prove racial discrimination and retaliation. In the absence of any method to parse the thousands of hours billed by Plaintiff's counsel between the successful and unsuccessful claims, the Court finds that taking into account the relative burden of presenting the evidence used to present the successful claims is appropriate.

Nevertheless, the Court finds that reducing the lodestar by eighty percent is excessive. Although Plaintiff obtained only a fraction of the monetary relief that he sought, he succeeded on nearly a third of his claims, and all of his claims were sufficiently related for the purpose of apportioning fees. *Response* [#90] at 9. Based on the undersigned's thirty-five years of combined private and judicial experience and careful consideration of the parties' filings and issues underlying this matter, the Court finds that reducing the lodestar by one-half, or fifty percent, is appropriate. Accordingly, after reducing the total lodestar ($410,145.50) by fifty percent for limited success, Plaintiff is awarded $205,072.75 in fees.

### III.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#88] is **GRANTED in part and DENIED in part**.  The Motion is **granted** to the extent that Plaintiff is awarded $219,324.39, consisting of $205,072.75 in fees and $14,251.64 in non-taxable expenses.  The Motion is **denied** in all other respects.

Dated: February 20, 2020

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge